JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-Appellant Curtis Jackson ("Appellant") appeals from his conviction for drug trafficking. For the reasons set forth below, we affirm.
 {¶ 2} On June 30, 2004, the Cuyahoga County Grand Jury indicted Appellant for one count of drug trafficking in violation of R.C. 2925.03. The Appellant was then arraigned and pled not guilty to the single-count indictment.
 {¶ 3} On January 19, 2005, Appellant signed a jury waiver form and the case proceeded to trial. At trial, the following individuals testified on behalf of the state: Mark Erman, Jonathan Schroeder and Scott Moran.
 {¶ 4} Mark Erman ("Erman") testified that on May 25, 2004 he was in the area of West 130th Street and Terminal Avenue before dark to purchase crack cocaine. He explained that he drove to the intersection of those streets and saw an African-American male standing on the street with whom he made eye contact. The male walked over to his vehicle and Erman displayed money in his hand. Erman then purchased crack cocaine from the male. Erman was unable to identify the Appellant as the seller because he did not get a good look at the individual.
 {¶ 5} Three blocks from the drug purchase, Erman noticed a white Jeep Cherokee following him. He was then pulled over around West 150th Street and Puritas Avenue. Once pulled over, the police confiscated crack cocaine from his vehicle.
 {¶ 6} Detective Jonathan Schroeder ("Schroeder") testified that on May 25, 2004 he was driving an undercover vehicle in the area of West 130th Street and Bellaire Road. He was traveling southbound on West 130th Street, came across St. James Avenue, and saw a maroon Dodge Shadow stopped at a stop sign. He then witnessed the driver, later determined to be Erman, looking southbound down West 130th Street toward the next street, Terminal Avenue. He also saw the Appellant standing there. Schroeder next saw Appellant flag down Erman, trying to get his attention. Based upon Schroeder's eight and one-half years experience and the nature of the area, he suspected that a drug transaction was about to occur. He, therefore, pulled into a parking lot across from Terminal Avenue and set up surveillance.
 {¶ 7} Schroeder further testified that he watched Erman come off St. James Avenue, drive south on West 130th Street and pull onto Terminal Avenue. He then witnessed Erman make an exchange with Appellant, who was wearing a white jersey with a blue number 20. After the transaction, Appellant turned toward West 130th Street, toward Schroeder, and counted money.
 {¶ 8} Schroeder then began to follow Erman in his vehicle. In pursuit of Erman, Schroeder drove past Appellant and got another look at him from about 25 feet away. He also radioed Detectives Moran and Klamert to assist him and apprehend Appellant.
 {¶ 9} Schroeder explained that he and the other detectives then stopped Erman at West 150th Street and Violet. Moran and Klamert informed him that they witnessed Erman "sticking an object in between the driver's seat and the center console." As a result, Schroeder conducted a search of Erman's vehicle incident to his arrest and found in the center console one rock of crack cocaine.
 {¶ 10} Schroeder also testified that, while Detectives Moran and Klamert attempted to locate Appellant, he had Erman's vehicle towed. Schroeder stated that they were unable to locate Appellant to arrest him on that date. As a result, he obtained a warrant for Appellant's arrest, since Schroeder knew him from previous encounters, and a few days later, Appellant was arrested.
 {¶ 11} Moran testified that he participated in the arrest of both Erman and Appellant. He stated that he was in his patrol car with Klamert when Schroeder, who was in an undercover vehicle, alerted them that he had observed a drug transaction at West 130th Street and Terminal Avenue. Moran explained that Schroeder broadcast the description of the vehicle involved in the transaction and requested assistance in apprehending the vehicle.
 {¶ 12} Moran and Klamert responded to the call and pulled the vehicle over at West 150th Street and Violet. While pulling over Erman, Moran observed Erman leaning and attempting to conceal something in the console. Once stopped, the detectives arrested Erman after finding one rock of crack cocaine in the car. At the same time, Schroeder described the drug seller's clothing, identity and address to Moran and Klamert.
 {¶ 13} Moran and Klamert, in an effort to find and arrest Appellant, proceeded to West 130th Street and Terminal Avenue, as well as Appellant's neighborhood, but were unable to find him.
 {¶ 14} Moran further testified that a couple days later, he found Appellant and arrested him. He explained that he observed Appellant, whom he recognized from prior encounters, drive past him in a vehicle. Moran then "ran" the license plate of the vehicle, which revealed that Appellant was the owner. He pulled the Appellant over and arrested him.
 {¶ 15} Thereafter, the state rested its case and Appellant moved for an acquittal of the charge pursuant to Crim.R. 29, which the court denied. Appellant then rested his case and the court heard closing arguments. On January 21, 2005, the court found Appellant guilty of drug trafficking and referred him to the county probation department for a presentence investigation. On February 25, 2005, the court sentenced Appellant to two years community control sanctions.
 {¶ 16} Appellant now appeals and asserts four assignments of error for our review.
 {¶ 17} Appellant's first assignment of error states:
 {¶ 18} "Mr. Jackson's right to confront the witnesses against him was violated when the hearsay statement of Mark Erman was introduced through Schroeder."
 {¶ 19} Within this assignment of error, Appellant maintains that a statement of Erman that was introduced through Schroeder was hearsay, as well as a violation of Appellant's right to confront a witness who had information against him. In asserting these propositions, we are directed to the following portion of the cross-examination of Schroeder:
 {¶ 20} "[Defense counsel]: You indicated when you pulled over Mr. Erman you recovered some drugs?
 {¶ 21} "[Schroeder]: Yes.
 {¶ 22} "[Defense counsel]: How do you know those are the drugs that were sold to Mr. Erman?
 {¶ 23} "[Schroeder]: I asked Mr. Erman if that's what — if he just bought those drugs. He said yes, off of 130th Street.
 {¶ 24} "[Defense counsel]: But you were here. He didn't testify to that.
 {¶ 25} "[Schroeder]: No, I don't believe he did."
 {¶ 26} Ohio Evid. R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at a trial or hearing, offered in evidence to prove the truth of the matter asserted." However, statements offered solely to impeach do not have substantive evidentiary value, and the hearsay rule and its exceptions do not apply. State v. Jones (1996),114 Ohio App.3d 306, 323, 683 N.E.2d 87; Dayton v. Combs (1993),94 Ohio App.3d 291, 296, 640 N.E.2d 863.
 {¶ 27} Schroeder's testimony on cross-examination regarding Erman's statement was not elicited for its truth, but instead, was intended to impeach Schroeder's credibility. Defense counsel asked Schroeder how he determined Erman obtained the drugs located in his vehicle. Once he testified that Erman informed him the Appellant sold him the drugs, defense counsel quickly followed up with: "But you were here. He didn't testify to that." It is apparent from this dialogue that defense counsel's cross-examination was intended to elicit inconsistencies and not substantive evidence. Because Schroeder's statement was elicited to test his credibility and not for the truth of the matter asserted, it is not hearsay and therefore it is not subject to the hearsay exclusion.
 {¶ 28} Furthermore, Appellant may not take comfort from the error he invited. See State ex rel. V. Cos. v. Marshall,81 Ohio St.3d 467, 471, 1998-Ohio-329, 692 N.E.2d 198. The invited error doctrine prohibits a party who induces error in the trial court from taking advantage of such error on appeal. State v.Woodruff (1983), 10 Ohio App.3d 326, 327, 462 N.E.2d 457. The invited error doctrine is applied when counsel is "actively responsible" for the trial court's error. State v. Campbell,90 Ohio St.3d 320, 324, 2000-Ohio-183, 738 N.E.2d 1178. In this case, we find that defense counsel asked the question that evoked the alleged error from which the instant appeal stems. Accordingly, we find Appellant's argument lacks merit.
 {¶ 29} Finally, Appellant maintains that the admission of Schroeder's testimony violated the Confrontation Clause of theSixth Amendment of the U.S. Constitution because it was a testimonial statement. The Confrontation Clause provides that "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him."Sixth Amendment to the United States Constitution. We employ a de novo standard when reviewing a claim that a criminal defendant's rights have been violated under the Confrontation Clause. UnitedStates v. Robinson (C.A.6, 2004), 389 F.3d 582, 592.
 {¶ 30} We do not find the statement "testimonial." As we held in State v. Smith, 162 Ohio App.3d 208, 215, 2005-Ohio-3579,832 N.E.2d 1286, if a statement is not hearsay, it cannot be testimonial in nature. Therefore, the statement does not violate the Confrontation Clause of the Sixth Amendment. Id. at 215, relying on United States v. Sexton (C.A.6, 2005), 119 Fed. Appx. 735.
 {¶ 31} Accordingly, because Schroeder's statement made during cross-examination is not hearsay, but was invited error, and did not violate the Appellant's Sixth Amendment rights, we find Appellant's first assignment of error is without merit.
 {¶ 32} Appellant's second assignment of error states:
 {¶ 33} "The defendant was denied his constitutional right to a fair trial when the court erred in failing to immediately strike the inadmissible and unfairly prejudicial responses of Detective Schroeder."
 {¶ 34} Appellant alleges that the trial court erred in allowing Schroeder to testify on cross-examination regarding Appellant's prior arrest, of his having a record for drug trafficking, and of his coming from a dangerous family. Within this assignment of error, Appellant essentially contends that his right to a fair trial was denied because the trial court impermissibly allowed irrelevant "other acts" evidence to be admitted.
 {¶ 35} As an initial matter, we note that it is axiomatic that "the admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Sage
(1987), 31 Ohio St.3d 173, 510 N.E.2d 343, paragraph two of the syllabus; see, also, State v. Bey, 85 Ohio St.3d 487, 490,1999-Ohio-283, 709 N.E.2d 484. Where an error in the admission of evidence is alleged, appellate courts do not interfere unless it is shown that the trial court clearly abused its discretion.State v. Maurer (1984), 15 Ohio St.3d 239, 473 N.E.2d 768.
 {¶ 36} Evid.R. 404(B) provides that evidence of "other acts" is not admissible to prove the character of a person in order to show that the accused acted in conformity therewith. Evidence of "other acts" is generally prejudicial and generally is prohibited by Evid.R. 404(B). See, e.g., State v. Curry (1975),43 Ohio St.2d 66, 68-69, 330 N.E.2d 720. See, also, State v. Thorton
(Apr. 1, 1999), Cuyahoga App. No. 73232.
 {¶ 37} There is, however, an exception to the general rule against admissibility of prior bad acts:
 {¶ 38} "While `other acts' evidence may not be used to prove criminal propensity, such evidence may be admissible `if (1) there is substantial proof that the alleged other acts were committed by the defendant, and (2) the evidence tends to prove notice, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" Id., citing Statev. Lowe, 69 Ohio St.3d 527, 530, 1994-Ohio-345, 634 N.E.2d 616; see, also, Evid.R. 404(B); R.C. 2945.59.
 {¶ 39} "Other acts" evidence may be admissible for purposes of identification of the perpetrator of a crime. Curry, supra at 73; State v. Gasaway (Dec. 1, 1977), Franklin App. No. 77AP-486.
 {¶ 40} Even if relevant, however, evidence of prior acts must be excluded if the probative value is outweighed by the prejudicial impact on the defendant. State v. Mann (1985),19 Ohio St.3d 34, 36-37, 482 N.E.2d 592.
 {¶ 41} First, Appellant maintains the trial court erred in allowing defense counsel to cross-examine about a prior arrest of Appellant, although not on drug charges. Appellant next complains that Schroeder recalled an incident when a bail bondsman was in pursuit of Appellant and Schroeder arrested him. Appellant also contends that Schroeder testified that Appellant had been arrested for drug offenses by other vice officers. Finally, Appellant argues that Schroeder stated that Appellant has a brother who is currently in jail. The portion of the transcript to which Appellant refers states as follows:
 {¶ 42} "* * * [Defense counsel]: How do you know him?
 {¶ 43} "[Schroeder]: Like I said, I have had multiple interactions with himself and his family. I have known his family. I know his mom.
 {¶ 44} "[Defense counsel]: You said you know him so well. Have you arrested Curtis for drug transactions?
 {¶ 45} "[Schroeder]: No, I have never arrested him for drugs. I have arrested him for warrants.
 {¶ 46} "[Defense counsel]: What? Driving, traffic warrants?
 {¶ 47} "[Schroeder]: I can't remember what it was. A few years back I know there was a — it is a bail bondsman that was at his house looking for him, and I know they didn't find him.
 {¶ 48} "Then the next day I saw Curtis walking down the street. So I knew he had warrants so I stopped and arrested him.
 {¶ 49} "[Defense counsel]: You have indicated, you testified earlier that you have seen Curtis on the street or on the corner and gone up and checked him out to see what he was doing.
 {¶ 50} "[Schroeder]: Yes, I have.
 {¶ 51} "[Defense counsel]: Have you ever found any drugs on him, any crack cocaine?
 {¶ 52} "[Schroeder]: No, I never have.
 {¶ 53} "[Defense counsel]: So in all the years that you know Curtis — how many years is it?
 {¶ 54} "[Schroeder]: Pretty much since I have been a policeman. Close to eight years.
 {¶ 55} "[Defense counsel]: Eight and-a-half years. You have never seen him traffic drugs, you have never arrested him for trafficking drugs, you have never arrested him for possession of drugs?
 {¶ 56} "[Schroeder]: Me personally, no.
 {¶ 57} "[Defense counsel]: Does Curtis have any brothers?
 {¶ 58} "[Schroeder]: Yes, he does.
 {¶ 59} "[Defense counsel]: They look like Curtis?
 {¶ 60} "[Schroeder]: His brother is in jail. I mean, I don't think so.
 {¶ 61} "[Defense counsel]: I didn't ask if he was in jail. Does he have any brothers and does he look like him?
 {¶ 62} "[Schroeder]: No, I don't think — I know Curtis. I don't think he looks like him. I know who Curtis is.
 {¶ 63} "[Defense counsel]: But you don't know him to be a drug trafficker.
 {¶ 64} "[Schroeder]: Yes, I do.
 {¶ 65} "[Defense counsel]: You testified you never arrested him for drugs?
 {¶ 66} "[Schroeder]: I never have. But he has a record for drug trafficking.
 {¶ 67} "[Defense counsel]: In eight and-a-half years working in that unit, you have never arrested him?
 {¶ 68} "[Schroeder]: I never have. Other vice unit members have.
 {¶ 69} "[Defense counsel]: I am just asking if you have, Detective.
 {¶ 70} "[Schroeder]: No, I never have. * * *."
 {¶ 71} On cross-examination, defense counsel asked Schroeder how he knew the Appellant so that he could easily identify him as the individual involved in the drug transaction with Erman. Each question thereafter attempted to discredit Schroeder's testimony as to knowing Appellant and the extent to which he had dealings with the Appellant. In fact, defense counsel sought information regarding Appellant's brother in an attempt to show that Schroeder may have confused Appellant with his similar-looking brother. Such information provided by Schroeder was for the purpose of identification only and not to prove the bad character of the
Appellant in an effort to prejudice the court. As defense counsel stated in his opening statement, "this is an identity case." Hence, we find that the trial court did not err in admitting the other acts testimony which was relevant to the charge at issue.
 {¶ 72} The last part of the testimony of which Appellant complains was again elicited on cross-examination:
 {¶ 73} "* * * [Defense counsel]: But you testified that the seller, the drug trafficker, they carry guns, they are more dangerous?
 {¶ 74} "[Schroeder]: Yes, I have.
 {¶ 75} "[Defense counsel]: You allege Curtis Jackson had to be a drug trafficker, yet you wait three days to make an arrest, where you give the person selling drugs three more days to continue to do that?
 {¶ 76} "[Schroeder]: Curtis Jackson lived in the neighborhood for a long time. I mean, his chance — there is a very good chance that if I went and knocked on his door, his family is not going to answer anyway. They are not very cooperative towards the police. They are actually a lot of dangerous people. His family is made up of a lot of dangerous people.
 {¶ 77} "We made the decision just to wait until we saw him. We saw him three days later and he was arrested. * * *."
 {¶ 78} Appellant maintains that the trial court erred in admitting this testimony. Defense counsel, however, elicited this information to challenge Schroeder's decision to wait three days to apprehend the Appellant when Schroeder was so certain that he was the one who made the drug sale to Erman. As such information was evoked to discredit Schroeder's certainty as to the Appellant's identity as the perpetrator, we find such information admissible as proof of identity and not prejudicial.
 {¶ 79} Furthermore, the error, if any, was harmless. Pursuant to Crim.R. 52(A), "any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." To find an error harmless, an appellate court must be able to declare a belief that the error was harmless beyond a reasonable doubt. Lytle, supra. An appellate court may overlook an error where the other admissible evidence, standing alone, constitutes "overwhelming" proof of guilt. State v. Williams (1983),6 Ohio St.3d 281, 452 N.E.2d 1323, paragraph six of the syllabus.
 {¶ 80} In the instant matter, we find any alleged error is harmless. Erman testified that he purchased crack cocaine, which Schroeder later discovered in Erman's vehicle, from an African-American male near West 130th Street and Terminal. Yet, Erman was unable to identify the individual who sold him the drugs because, as he stated, he was scared and did not make eye contact with the individual. Schroeder, however, testified that he witnessed the entire transaction and saw Appellant, whom he recognized from previous encounters. He explained that he saw Appellant wave to
Erman and exchange something. He then saw the Appellant turn around toward him and count money. After the transaction, Schroeder stopped Erman and found crack cocaine in his vehicle. In light of this other evidence, the judgment of the trial court would not have been different absent the testimony.
 {¶ 81} Additionally, Appellant cannot, on appeal, complain that the trial court erred in permitting the admission of prejudicial testimony which he elicited from the witness. "The rule of `invited error,' prohibits a party who induces error in the trial court from taking advantage of such error on appeal."Woodruff, supra at 327.
 {¶ 82} Appellant's second assignment of error is without merit.
 {¶ 83} Appellant's third assignment of error states:
 {¶ 84} "The defendant was denied his right to effective assistance of counsel when defense counsel failed to protect his rights before and during trial."
 {¶ 85} In order to demonstrate ineffective counsel, a defendant must show, not only that his counsel's representation was deficient, but also that the deficient performance prejudiced the defense. Strickland v. Washington (1984), 466 U.S. 668,80 L.Ed.2d 674, 104 S.Ct. 2052; State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373. Counsel's performance may be found to be deficient if counsel "made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by theSixth Amendment."
Strickland, supra at 687. To establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley, supra at paragraph two of the syllabus; see, also, Strickland, supra at 687.
 {¶ 86} The Appellant has the burden of proving ineffective assistance of counsel over a strong presumption that a properly licensed trial counsel rendered adequate assistance. State v.Smith (1985), 17 Ohio St.3d 98, 100, 477 N.E.2d 1128.
 {¶ 87} Appellant contends that defense counsel was ineffective for failing to object and allowing the irrelevant and prejudicial testimony of Schroeder complained about in Appellant's assignments of error 1 and 2. We find Appellant's argument lacks merit. We decided in Appellant's previous assignments of error that Schroeder's testimony was admissible and pertinent to the charge. A defense counsel's failure to object is not ineffective assistance of counsel if the evidence is admissible. As the Supreme Court of Ohio stated, "Counsel is certainly not deficient for failing to raise a meritless issue."State v. Taylor, 78 Ohio St.3d 15, 31, 1997-Ohio-243,676 N.E.2d 82. Accordingly, we do not find Appellant's counsel deficient in his performance.
 {¶ 88} Furthermore, we find that defense counsel's decisions not to object constituted trial strategy. See State v. Gross,97 Ohio St.3d 121, 150-151, 2002-Ohio-5524, 776 N.E.2d 1061, citing State v. Hartman, 93 Ohio St.3d 274, 296,2001-Ohio-1580, 754 N.E.2d 1150 (failure to object can be legitimate tactical decision); State v. Issa, 93 Ohio St.3d 49,68, 2001-Ohio-1290, 752 N.E.2d 904, citing Taylor, supra ("Counsel is certainly not deficient for failing to raise a meritless issue"). A failure to object, in and of itself, does not rise to the level of ineffective assistance of counsel. "Because `objections tend to disrupt the flow of a trial, [and] are considered technical and bothersome by the fact-finder,' Jacobs, Ohio Evidence (1989), at iii-iv, competent counsel may reasonably hesitate to object * * *." State v. Campbell,69 Ohio St.3d 38, 53, 1994-Ohio-492, 630 N.E.2d 339, 352. Accordingly, we find defense counsel's decision not to object constituted a legitimate trial tactic. Such a decision, therefore, falls within the realm of reasonable professional assistance and is not ineffective. Appellant's third assignment of error is without merit.
 {¶ 89} Appellant's fourth assignment of error states:
 {¶ 90} "The court's decision finding the defendant guilty of drug trafficking was not supported by sufficient evidence and was against the manifest weight of the evidence."
 {¶ 91} Within this assignment of error, Appellant asserts that the state did not present sufficient evidence that Appellant was the individual involved in the transaction with Erman. In support of this proposition, Appellant maintains that the only evidence against Appellant in this case was Schroeder's testimony that he saw a drug transaction between Appellant and Erman and that Erman was later found in possession of crack cocaine. Appellant further maintains that there is insufficient evidence that Appellant was the man who sold Erman the crack cocaine.
 {¶ 92} When reviewing a challenge to the sufficiency of the evidence, an appellate court must view the evidence in a light most favorable to the prosecution and determine if any rational trier of fact could have found the essential elements of the crime, proven beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, at paragraph two of the syllabus, citing Jackson v. Virginia (1979), 443 U.S. 307,99 S.Ct. 2781, 61 L.Ed.2d 560. Thus, a reviewing court will not overturn a conviction for insufficiency of "the evidence unless we find that reasonable minds could not reach the conclusion reached by the trier of fact." State v. Treesh,90 Ohio St.3d 460, 484, 2001-Ohio-4, 739 N.E.2d 749.
 {¶ 93} The Appellant was charged and convicted of drug trafficking in violation of R.C. 2925.03(C)(4). The record demonstrates that Erman purchased crack cocaine from an African-American male near West 130th Street and Terminal Avenue. Although Erman was unable to identify the individual who sold him the drugs, Schroeder testified that he witnessed the entire transaction. He testified that Appellant sold the drugs to Erman, as he witnessed Appellant wave to Erman, exchange something with Erman and then turn around and count money. Thereafter, Schroeder stopped Erman and found crack cocaine in his vehicle. Viewing the foregoing evidence in a light most favorable to the state, we find that reasonable minds could have reached the same conclusion as the trial court and found that Appellant was the seller in the drug transaction with Erman. Therefore, sufficient evidence existed to support Appellant's conviction for drug trafficking.
 {¶ 94} Within this assignment of error, Appellant also maintains that his conviction for drug trafficking was against the manifest weight of the evidence.
 {¶ 95} To reverse a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id., citing Tibbs v. Florida (1982), 457 U.S. 31, 45,102 S.Ct. 2211, 72 L.Ed.2d 652. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the court clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See Statev. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Thus, the discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id.
 {¶ 96} In this matter we cannot conclude that the court lost its way. Weighing all the evidence and all reasonable inferences, we find that the trial court could reasonably conclude that Appellant was the seller involved in the drug transaction with Erman. Therefore, the trial court did not create a manifest injustice by finding Schroeder's testimony credible that he witnessed the transaction and that he positively identified the Appellant as the seller. In light of the foregoing, we cannot disagree with the trial court's resolution finding Appellant guilty of drug trafficking, as the evidence does not weigh heavily against the conviction. Appellant's fourth assignment of error is without merit.
 {¶ 97} The judgment is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Corrigan, J., concurs.
 Cooney, P.J., concurs in judgment only (see attached concuringopinion)
 CONCURRING OPINION