JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Allen Simuel, appeals his conviction of two counts of drug trafficking and one count of possession of drugs. After reviewing the facts of the case and the pertinent law, we affirm.
 {¶ 2} On August 31, 2006, a Cuyahoga County Grand Jury indicted Simuel on two counts of drug trafficking, in violation of R.C. 2925.03(A)(1) and (A)(2), and two counts of possession of drugs, in violation of R.C.2925.11(A). He entered a plea of not guilty to the charges. A jury trial commenced on October 24, 2006. The following testimony was offered at trial. *Page 3 
 {¶ 3} Detective Philmore Evans, with the Cleveland Police Vice Unit, testified that on August 17, 2006, at approximately 9:20 p.m., he and a confidential reliable informant ("CI") were involved in a "buy bust" operation. He stated that he gave the CI $20 of marked and copied "buy money" to purchase a rock of crack cocaine. He testified that he searched the CI to ensure that he did not have contraband or other money on him.
 {¶ 4} Detective Evans stated that he then drove the CI to the area of East 153rd Street and Bartlett, which is known for its "high drug activity." He and Detective John Hall conducted surveillance in separate undercover vehicles. He also stated that the "takedown unit," consisting of ten other detectives, was available to make arrests.
 {¶ 5} Detective Evans explained that he saw the CI walk to the corner of East 153rd Street and Bartlett and then, "[Simuel] * * * crossed the street and began engaging in conversation with [the] CI." He stated that the CI and Simuel "started walking southbound on 153rd at which time [he] observed them do a hand-to-hand exchange, then [the] CI * * * started walking away from [Simuel] and the CI gave [Detective Evans] the signal, a predetermined signal that the buy was made." He testified that he did "not really" see what was exchanged, but it was small enough to fit in the CI's hand.
 {¶ 6} He further explained that Simuel was "looking around back and forth" at "[c]ars that might pass or people on the street." He stated that he has observed people selling drugs before, and they "look around, making sure nobody is looking, *Page 4 
you know, nobody is coming to get them after the sale." Based on his experience and what he saw, he concluded, "[t]hat a buy was made for narcotics from [Simuel]."
 {¶ 7} Detective Evans testified that he and Detective Hall then radioed the takedown unit of the location and description of Simuel. He stated that it was dark outside, but the location was well lit with street lights and he was able to give a good physical description of Simuel.[1] He said that the takedown unit arrested Simuel.
 {¶ 8} He additionally testified that when the CI returned to the vehicle, "[he] confiscated * * * a rock of cocaine [from him]." Detective Evans was asked if, "* * * [he found] the buy money [he] gave [the CI] on [the CI]?" He replied, "[n]o." He was also asked, "* * * based on [his] experience from the size of the rock [he] got, would the informant have used all the money?" He replied, "[y]es."[2]
 {¶ 9} On cross-examination, Detective Evans testified that he paid the CI $25 for his service. He confirmed that he saw a hand-to-hand exchange, but then agreed he did not know for sure what was exchanged. He stated that when he saw the CI give the predetermined signal, he knew the buy money had been exchanged. He also said that a third individual, Donald Wyley, showed up at the scene and was arrested for possession of a crack pipe.
 {¶ 10} Detective Michael Rasberry, with the Cleveland Police Vice Unit, testified that he was part of the takedown unit. He was notified that a drug sale had been completed and then given a description and location of Simuel. He stated that *Page 5 
as he drove to the scene, he was advised that a third male, Wyley, appeared and approached Simuel.
 {¶ 11} Detective Rasberry testified that as he approached Simuel and Wyley, they walked away from each other and when they were approximately ten to fifteen feet apart, they each threw something toward the grass. Detective Rasberry stated that he walked directly to the location where Simuel made the throwing motion and saw a rock of cocaine.[3] He testified that he then went to the area where Wyley made the throwing motion and located a crack pipe. Simuel and Wyley were both arrested.
 {¶ 12} Detective Rasberry stated that despite searching Simuel and Wyley, and looking for the buy money, it was never found. He testified that there have been several other instances where he did not recover the buy money because "people do things with [it] and [he has] seen people eat the buy money before."
 {¶ 13} On cross-examination, Detective Rasberry agreed that it was possible that the rock of cocaine he found had fallen out of Wyley's crack pipe.
 {¶ 14} Detective Hall testified that he saw Simuel cross the street to meet the CI, they talked, walked south bound on East 153rd Street, and made a hand-to-hand transaction. He stated that Wyley then appeared at the scene.
 {¶ 15} Detective Hall testified that when the takedown unit arrived, Simuel and Wyley walked away from each other. He stated that Simuel made a throwing motion, but he never saw anything fly out of his hand. He said that Detective *Page 6 
Rasberry recovered a rock of cocaine from the scene. He also saw Wyley drop an object, which was later determined to be a crack pipe.
 {¶ 16} He further testified that the buy money was not recovered and he did not know what happened to it. He also stated that he has been in several situations where the buy money disappears. He has seen people put buy money in their mouths, throw it down sewers, and put it in their rectums.
 {¶ 17} On cross-examination, Detective Hall was asked, "[s]o you're saying you saw [the CI] pull out some money and hand [Simuel] the money and he handed [the CI] the drugs?" He replied, "yes."
 {¶ 18} At the close of the case, the state and Simuel stipulated that the drugs were positive for crack cocaine, both weighing less than one gram. The state rested its case. Simuel then moved for a Crim.R. 29 acquittal which the state opposed and the trial court denied.
 {¶ 19} Simuel rested his case without presenting any evidence. Simuel renewed his Crim.R. 29 motion, which the court denied. After deliberation, the jury found him guilty of counts one and two, drug trafficking, in violation of R.C. 2925.03(A)(1) and (A)(2), and count three, possession of drugs, in violation of R.C. 2925.11(A). However, the jury found Simuel not guilty of count four, possession of drugs, in violation of R.C. 2925.11(A).
 {¶ 20} On October 25, 2006, the court sentenced Simuel to one year in prison on each of counts one, two, and three. Counts one and two were run concurrently with one another, but consecutive to count three, for a total of two years in prison. *Page 7 
The court also informed Simuel that he would serve three years of postrelease control.
 {¶ 21} It is from this judgment that Simuel appeals, raising the following four assignments of error:
 {¶ 22} "[1.] The trial court erred when it allowed the state to introduce speculative opinion testimony in violation of Evid.R. 602, and thus deprived appellant of his constitutional right to due process and a fair trial.
 {¶ 23} "[2.] The trial court erred in allowing the state to introduce inadmissable [sic] hearsay testimony in violation of Evid.R. 802, and thus deprived appellant of his constitutional right to due process and a fair trial.
 {¶ 24} "[3.] The trial court erred when it failed to grant appellant's motion for judgment of acquittal pursuant to Crim.R. 29.
 {¶ 25} "[4.] The jury verdict was against the manifest weight of the evidence."
 {¶ 26} In his first assignment of error, Simuel argues that the trial court erred when it allowed Detective Evans to testify, "[t]hat a buy was made for narcotics from [Simuel,]" when he did not have personal knowledge that a drug transaction took place. We disagree.
 {¶ 27} Generally, a trial court enjoys broad discretion in admitting or excluding evidence, and a reviewing court will not reverse that decision absent a finding of abuse of discretion. State v. Williams
(1982), 7 Ohio App.3d 160, paragraph one of the syllabus. A finding that a trial court abused its discretion implies that the trial *Page 8 
court acted unreasonably, arbitrarily, or unconscionably. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 28} Evid.R. 602 states, "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony. * * *" Personal knowledge is first-hand information acquired by one or more of the senses. State v. Mitchell (Jan. 16, 1998), 2d Dist. No. 97-CA-0048, 97-CA-0049, 1998 Ohio App. LEXIS 220, at 11.
 {¶ 29} In this case, Detective Evans testified several times that he saw a hand-to-hand transaction between Simuel and the CI. Although he stated that he did "not really" see what was exchanged, he saw that it was small enough to fit in the CI's hand. He further described that during the transaction, he saw Simuel looking around for cars and people. He stated that he has observed other drug sales, and the sellers look around to see if anyone is watching or going to arrest them. Based on his experience and what he saw, he concluded that Simuel sold drugs to the CI.
 {¶ 30} Thus, there is ample evidence, that when Detective Evans testified, he had personal knowledge of the hand-to-hand exchange between Simuel and the CI. Therefore, the trial court did not abuse its discretion when it allowed his testimony.
 {¶ 31} Accordingly, Simuel's first assignment of error is overruled.
 {¶ 32} In his second assignment of error, Simuel contends that the trial court erred when it allowed inadmissable hearsay regarding the CI's signal to indicate that a drug transaction took place. More specifically, Simuel argues that admitting this *Page 9 
hearsay evidence violates his Sixth Amendment Right to confront the CI. After a thorough review, we determine that this argument lacks merit.
 {¶ 33} As previously discussed, the admission or exclusion of evidence rests within the sound discretion of the trial court. State v.Jacks (1989), 63 Ohio App.3d 200, 207. Absent a showing of abuse of discretion, a reviewing court will not overrule a trial court's finding.Williams, supra.
 {¶ 34} Pursuant to Evid.R. 801(C),"`[h]earsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." The nonverbal conduct of a person, if intended to be an assertion, is a statement. Evid.R. 801(A). Statements that are not hearsay are not implicated by the confrontation clause because they are not testimonial in nature. State v. Waddell, 3rd Dist. Nos. 9-04-30, 9-04-31, 9-04-32,2005-Ohio-1426, at _17, citing Crawford v. Washington, 541 U.S. 36.
 {¶ 35} As quoted by the United States Supreme Court, the Confrontation Clause of the Sixth Amendment states, "`in all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him.'" Crawford, at 38. The question of whether a defendant's rights under the Confrontation Clause have been violated is reviewed under a de novo standard. State v. Smith, 162 Ohio App.3d 208,2005-Ohio-3579, at _8, citing United States v. Robinson (C.A.6, 2004),389 F.3d 582, 592.
 {¶ 36} This court, in Smith, supra, addressed the question of whether a detective's testimony about a CI's verbal signals was hearsay in violation of the *Page 10 
Confrontation Clause. The detective testified that the CI verbally identified the drugs, counted the marked money, and then said "looking good, looking good," to indicate that a drug transaction occurred and an arrest could take place. Id., at _5-_15. This court determined that the testimony was not hearsay because it was not offered to prove the truth of the matter asserted. Id. at _14. We decided that the statements simply provided context within which to understand the events leading up to the defendant's arrest. Id.
 {¶ 37} Additionally, this court quoted the Sixth Circuit Court of Appeals in United States v. Sexton (C.A. 6, 2005), 119 Fed. Appx. 735, 743: `"[w]hen an out-of-court statement is not offered to prove the truth of the matter asserted, * * * the Confrontation Clause is not implicated. * * *" Smith, supra, at _13. Thus, we concluded that since the CI's oral statements were not hearsay under Evid.R. 801(C), they were not testimonial statements and Crawford did not apply. Id. at _16. Therefore, the statements did not violate the defendant's constitutional right to confrontation under the Sixth Amendment. Id.
 {¶ 38} In this case, Detective Evans testified that the CI gave him "* * * a predetermined signal that the buy was made." Detective Evans then stated that once he saw the signal, he notified the takedown unit to arrest Simuel.
 {¶ 39} The Supreme Court of Ohio has stated, "[i]t is well established that extrajudicial statements made by an out-of-court declarant are properly admissible to explain the action of a witness to whom the statement was directed." State v. Thomas (1980), 61 Ohio St.2d 223, 232, citing State v. Zamarripa (1976), 544 F.2d *Page 11 
978, 982, certiorari denied, 429 U.S. 1111; State v. Lopez (1957), 182 Kan. 46, 51-52.
 {¶ 40} We determine that Detective Evans' testimony about the CI giving him a predetermined signal that a buy was made was not offered to prove the truth of the matter asserted. Rather, his testimony provided context to explain his response to receiving the signal, i.e., calling the takedown unit, and the events leading up to Simuel's arrest.
 {¶ 41} Thus, the trial court did not abuse its discretion when it allowed the testimony, because the CI's signal was not hearsay under Evid.R. 801(C). Furthermore, since the signal was not hearsay, the Confrontation Clause under the Sixth Amendment is not applicable. See,Crawford, supra; Smith, at _13.
 {¶ 42} Therefore, Simuel's second assignment of error is overruled.
 {¶ 43} In his third assignment of error, Simuel contends that the trial court erred when it failed to grant his motion for judgment of acquittal pursuant to Crim.R. 29. We disagree with his argument.
 {¶ 44} Under Crim.R. 29(A), a trial court "shall not order an entry of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt." State v. Bridgeman (1978),55 Ohio St.2d 261, at syllabus. A motion for judgment of acquittal under Crim.R. 29 should only be granted where reasonable minds could not fail to find reasonable doubt. Id. at 263. *Page 12 
 {¶ 45} The test an appellate court must apply in reviewing a challenge based on a denial of a motion for acquittal is the same as a challenge based on sufficiency of the evidence to support a conviction. SeeState v. Bell (May 26, 1994), 8th Dist. No. 65356, 1994 Ohio App. LEXIS 2291. In State v. Thompkins (1997), 78 Ohio St.3d 380, 386, the Supreme Court of Ohio explained that sufficiency of the evidence and weight of the evidence are not synonymous legal concepts. They are "both quantitatively and qualitatively different." Id.
 {¶ 46} The court further explained:
 {¶ 47} "[w]ith respect to sufficiency of the evidence, `sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.' Black's Law Dictionary (6 Ed.1990) 1433. See, also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v.Robinson (1955), 162 Ohio St. 486 * * *. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process.Tibbs v. Florida (1982), 457 U.S. 31, 45 * * *, citing Jackson v.Virginia (1979), 443 U.S. 307 * * *." (Parallel citations omitted.) Id. at 386-387.
 {¶ 48} When determining sufficiency of the evidence, we must consider whether, after viewing the probative evidence in a light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the *Page 13 
offense proven beyond a reasonable doubt. State v. Shaffer, 11th Dist. No. 2002-P-0133, 2004-Ohio-336, at ¶ 17. Further, we note that the verdict will not be disturbed on appeal unless the reviewing court finds that reasonable minds could not have arrived at the conclusion reached by the trier of fact. State v. Dennis (1997), 79 Ohio St.3d 421, 430.
 {¶ 49} "Circumstantial evidence and direct evidence inherently possess the same probative value * * *." State v. Jenks (1991), 61 Ohio St.3d 259, at paragraph one of the syllabus.
 {¶ 50} Simuel was convicted of two counts of drug trafficking. Under R.C. 2925.03(A), "[n]o person shall knowingly do any of the following:
 {¶ 51} "(1) [s]ell or offer to sell a controlled substance;
 {¶ 52} "(2) [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person."
 {¶ 53} In addition, Simuel was convicted of one count of possession of drugs, in violation of R.C. 2925.11(A), which provides, "[n]o person shall knowingly obtain, possess, or use a controlled substance."
 {¶ 54} Simuel argues that his convictions should not stand for three reasons: (1) the detectives did not see him pass drugs to the CI; (2) the buy money was not found; and (3) the CI did not testify how the crack cocaine got into his possession and what happened to the buy money. *Page 14 
 {¶ 55} At the trial, the state's theory of the case was that Simuel was guilty of count one, drug trafficking, in violation of 2925.03(A)(1), because he sold a rock of crack cocaine to the CI. The state also maintained that he was guilty of count two, drug trafficking, in violation of 2925.03(A)(2), because he transported the crack cocaine across the street and delivered it to the CI. The state further asserted that he was guilty of count three, possession of drugs, in violation of 2925.11(A), because he possessed the crack cocaine before he sold it to the CI. (Simuel incorrectly argued in his brief that count three was based on the crack cocaine found by Detective Rasberry.)
 {¶ 56} A review of the record indicates that there is sufficient evidence, both direct and circumstantial, to support Simuel's convictions, even without the CI's testimony. The evidence shows that on August 17, 2006, Detective Evans gave the CI marked buy money to purchase a rock of crack cocaine. Detective Evans searched the CI to ensure there was no contraband or other money on him. At East 153rd Street and Bartlett, Simuel was seen crossing the intersection, talking with the CI, and then engaging in a hand-to-hand transaction with him. Detective Hall saw the CI give money to Simuel in exchange for drugs. The CI then signaled to Detective Evans and Detective Hall, and they notified the takedown unit to arrest Simuel. Although the buy money was never found, the CI directly returned to Detective Evans with a rock of crack cocaine and no buy money on him.
 {¶ 57} Therefore, we determine that there is sufficient evidence to convict Simuel of two counts of drug trafficking and one count of possession of drugs. Thus, the trial court did not err when it denied Simuel's Crim.R. 29 motion for acquittal. *Page 15 
 {¶ 58} Accordingly, Simuel's third assignment of error is overruled.
 {¶ 59} In his fourth assignment of error, Simuel argues that the jury verdict was against the manifest weight of the evidence. We conclude that this argument lacks merit.
 {¶ 60} With respect to manifest weight of the evidence, the Supreme Court has stated:
 {¶ 61} "[although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. [Robinson, supra, at 487]. Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducingbelief.' (Emphasis added.) Black's, supra, at 1594.
 {¶ 62} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony. [Tibbs, supra, at 42]. See, also, State v. Martin (1983), 20 Ohio App.3d 172, 175 * * * (`The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether *Page 16 
in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.')."Thompkins, supra, at 387.
 {¶ 63} With this standard in mind, we conclude that Simuel's convictions were not against the manifest weight of the evidence. Both Detective Evans and Detective Hall corroborated each other's version of the events. They both testified that they saw Simuel cross East 153rd Street and Bartlett and talk to the CI. They both stated that they observed the CI and Simuel in a hand-to-hand transaction and then saw the CI give the signal. Detective Hall testified that he saw the CI give money to Simuel in exchange for drugs. Detective Evans testified that he retrieved a rock of crack cocaine from the CI and that the CI did not have the buy money. Detective Rasberry and Detective Hall stated that the buy money was not found, but there have been several other instances where it has not been located.
 {¶ 64} After reviewing the testimony, we cannot conclude that the trier of fact lost its way. Thus, there was not such a "manifest miscarriage of justice" that the conviction should be reversed and a new trial ordered.
 {¶ 65} Therefore, Simuel's fourth assignment of error is overruled.
 {¶ 66} Accordingly, the judgment of the Cuyahoga County Court of Common Pleas is affirmed.
 It is ordered that appellee recover from appellant costs herein taxed. *Page 17 
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SEAN C. GALLAGHER, P.J., and CHRISTINE T. MCMONAGLE, J., CONCUR
[1] Detective Evans made an in-court identification of Simuel.
[2] The state marked the crack cocaine as Exhibit 1.
[3] The state marked the crack cocaine as Exhibit 2. *Page 1