[Cite as *In re H.P.P.*, 2020-Ohio-3974.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE H.P.P., JR.                    :

A Minor Child                        :            Nos. 108860 and 108861

                                     :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 6, 2020

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. DL19100170 and DL19104244

---

### *Appearances:*

Tim Young, Ohio Public Defender, and Lauren
Hammersmith, Assistant State Public Defender, *for
appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Eric Collins, Assistant Prosecuting
Attorney, *for appellee.*

MICHELLE J. SHEEHAN, J.:

{¶ 1} Appellant H.P.P., Jr. ("appellant" or "H.P." hereafter), appeals from

a judgment of the Juvenile Division of the Cuyahoga County Common Pleas Court

that found him delinquent for committing grand theft and safecracking. On appeal,

he argues the juvenile court should not have permitted a witness to testify by Skype at trial. Having reviewed the record and the applicable law, we affirm the juvenile court's judgment.

## Background

{¶ 2} In August 2018, appellant was in the permanent custody of Cuyahoga County Department of Children and Family Services ("CCDCFS") and resided at the Alton House, a youth group home, in Columbus. On the day of the incident, August 10, 2018, he went into an office where Chantelle Massie, a Therapeutic Behavioral Specialist, was working. The state's evidence shows that he used a code to open a safe, took a screwdriver from the safe, and then used the screwdriver to pry open a locked cabinet in an adjoining office. He took money and the key to the facility's van from the cabinet and tried to leave in the van, but crashed immediately. The staff of Alton House called the police, and appellant was stopped by the police officers when he walked away from the scene of the accident.

{¶ 3} On August 11, 2018, the state filed a complaint in Franklin County juvenile court, alleging appellant was delinquent for committing two counts of safecracking, a fourth-degree felony, and one count of grand theft involving a motor vehicle, also a fourth-degree felony. On December 5, 2018, the day the matter was scheduled before a magistrate for an adjudicatory hearing, appellant's counsel moved orally to transfer the case to Cuyahoga County. The state objected to the transfer citing the fact that all the witnesses were located in Franklin County and they would have to travel to Cuyahoga County for trial. The Franklin County juvenile

court granted the transfer on the grounds that appellant juvenile was in the custody of CCDCFS and was also on probation in Cuyahoga County. The matter was transferred to Cuyahoga County in January 2019.

{¶ 4} On March 14, 2019, appellant was arraigned in Cuyahoga County juvenile court. On April 5, 2019, the juvenile court set the matter for trial on April 26, 2019. On April 23, 2019, the state filed a motion requesting permission for Chantelle Massie to testify by Skype. The state alleged that Massie had already taken a day off work when she appeared at trial set in the Franklin County juvenile court and it was a burden for her to leave her work again on short notice and to travel to Cleveland. The state contended that to allow Massie to testify remotely would preserve the state's resources and the court's time.

{¶ 5} Appellant, through counsel, opposed the state's motion, arguing that the request for remote testimony was based on convenience to the witness rather than necessity. He argued that remote testimony would not allow the court to fully observe the witness's body language or tone of voice.

{¶ 6} On April 26, 2019, the matter was heard before a magistrate.[1] Before the trial, the magistrate heard the state's motion to have Massie testify via Skype. The magistrate granted the state's motion but advised the parties that "[i]f there becomes a circumstance which makes the witness's testimony difficult that I am not

_____

[1] Appellant was tried for another unrelated case at this hearing, but that case is not part of this appeal.

presently aware of, then we'll address it at that time and can make her available at a later time or later date if necessary."

**{¶ 7}** Before Massie testified, the defense counsel renewed appellant's objection to the video testimony. After placing Massie under oath, the magistrate asked the parties to accommodate the video testimony by speaking slowly and to wait their turn to speak. The magistrate also ensured that the witness was alone in the room where she was testifying. The transcript reflects the following:

> [THE COURT]: Okay. And I know in video there might be a slight second delay in the transmission of our voices, so I ask all parties in this courtroom and you to please speak slowly and wait until the other person finishes their question or their answer before you proceed to the next question or answer. Okay?
>
> [WITNESS]: Okay.
>
> [THE COURT]: And you are in a secure room right now, secure as in the door is closed?
>
> [WITNESS]: Yes, the door is closed.
>
> [THE COURT]: Okay. And is anyone else in that room with you?
>
> [WITNESS]: No.
>
> [THE COURT]: Okay. Thank you. * * *

(Tr. 92.)

**{¶ 8}** At the start of Massie's testimony, she indicated the video was "freezing," but the technical glitch appeared to resolve itself quickly; the transcript reflects the following:

> [PROSECTOR]: Miss Massie, can you state your name for the record and spell it?

[WITNESS]: It's completely freezing.  It's working now.

(Tr. 93.)

{¶ 9}     The transcript also reflects that when Massie was asked to identify appellant, she initially indicated she could not see his face, but the problem was also remedied quickly:

> [DEFENSE COUNSEL]:  Your honor, can we blowup the picture up there at the top?  I don't believe she can even see [H.P.] from the corner that's showing up there.
>
> THE COURT:  That's not what she's seeing.  That's what we're seeing.
>
> WITNESS:  I can't see his face.
>
> THE COURT:  Okay.  Tilt the screen.
>
> [PROSECUTOR]:  Is that better?
>
> WITNESS:  Yes.

(Tr. 94-95.)

{¶ 10}  After identifying H.P., Massie went on to testify that she is a Therapeutic Behavioral Specialist for The National Youth Advocate Program.  On the day of the incident, while she was working at an office at the Alton House, H.P. came into the office, seemingly upset.  He appeared to calm down after sitting down. While she continued to focus on her work, he got up and went to an adjoining office, closing and locking the door.  She heard what appeared to be rattling of the padlock on a cabinet in that office.  H.P. then came out of that office and proceeded to use a code to open a safe in the office where Massie was working.  She did not know how H.P. knew the code and also did not think there was anything inside the safe, but

H.P. took a screwdriver out of the safe. He then went back to the office where the locked cabinet was located, again shutting the door and locking it. Massie then heard some "bustling" sound around the padlock. It later turned out that H.P. took some money out of the cabinet as well as a key to the facility's van. Massie tried to talk to H.P. but he ignored her and walked past her. She then heard the van starting and saw H.P. in the driver's seat. She tried to persuade him from leaving but H.P. left with the van. The staff at the Alton House contacted the police. After Massie testified regarding the incident, she was cross-examined by the defense counsel.

{¶ 11} During Massie's testimony, there were several occasions where she indicated she could not hear the question well. On each occasion, the question was repeated and she answered the question. Pages 95-96 of the transcript reflect the following:

> [PROSECUTOR]: What do you remember about that incident? What do you remember about the incident?
>
> Miss Massie, can you hear me?
>
> [WITNESS]: No.
>
> [PROSECUTOR]: Can you hear me now?
>
> [WITNESS]: A little bit. I think it's a poor connection. Okay. I think it's on my end. Try it again.
>
> [PROSECUTOR]: What do you remember about the incident with the stolen van and money?
>
> [WITNESS]: It's really — all I heard was what do I remember about the stolen van and money.
>
> [PROSECUTOR]: That's correct.

[WITNESS]: Okay.  I remember [H.P.] coming into the office. * * *.

* * *

[PROSECUTOR]: Did you observe anything else after he locked the door?

[WITNESS]: I didn't hear you.

[PROSECUTOR]: Did you observe anything else, did you hear anything else after he locked the door?

[WITNESS]: There was kind of rattling of like the padlock on our cabinet, but that's all I heard.

(Tr. 95-96.)

{¶ 12}  Page 99 of the transcript reflects the following:

[PROSECUTOR]: Did you observe the manager's office that night after [H.P.] drove away?

[WITNESS]:  Could you repeat the first part of your question?

[PROSECUTOR]:  Did you observe the manager's office after [H.P.] drove away in the van?

[WITNESS]:  Yes. I ran in there to see what had happened and he had left the screwdriver and the cabinet was bent and the lock was broke.

(Tr. 99.)

{¶ 13}  Page 102 of the transcript reflects the following:

[DEFENSE COUNSEL]:  Okay.  What did you do at that point?

[WITNESS]:  I knew he couldn't get into it [the cabinet], break into it, so I just waited until he came out because I didn't have a key for the back office.

[DEFENSE COUNSEL]:  So it was really fine that he was in there?

[WITNESS]:  You broke up.  I didn't hear you.

[DEFENSE COUNSEL]:  Oh.  So was it okay that * * * he was in there then?

[WITNESS]:  No.  They're not allowed in the office at all.

(Tr. 102.)

{¶ 14}  Page 103 of the transcript reflects the following:

[DEFENSE COUNSEL]:  So after he came back out, you don't know how he knew the code.  You just —

[WITNESS]  No — Go ahead.  What?

[DEFENSE COUNSEL]  You said there was a code that he typed in?

[WITNESS]  To the safe, yes.

(Tr. 103.)

{¶ 15}  After Massie testified, the state presented the testimony of three police officers, Officer Jeffrey Ward, Officer Joshua Buck, and Detective Carl Covey, who testified in the courtroom.  The two officers testified that they arrested appellant on a public sidewalk near the Alton House after the incident.  The detective testified regarding his investigation of the case.  After trial, the magistrate found the allegations of the complaint proven.  Appellant was adjudicated delinquent for having committed the offenses of grand theft and safecracking charged in the complaint.

{¶ 16}  On May 15, 2019, appellant, through counsel, filed objections to the magistrate's decision.  One of the objections he raised related to the magistrate's permission for Massie to testify by video conferencing. Appellant argued the state

failed to demonstrate an important state interest, public policy, or necessity to justify the remote testimony by a key witness, in violation of his right of confrontation. He alleged the quality of the video was poor, there were frequent problems with communications, and the trial court lacked the ability to control the witness's surroundings or materials to which she had access. He also argued the trial court was unable to observe the demeanor and truthfulness of this key witness.

{¶ 17} On June 11, 2019, the trial court issued a journal entry overruling appellant's objection to the remote testimony. It found Massie unavailable to testify because she was employed in Columbus and working on the day of trial and her testimony met the reliability elements of confrontation — she was under oath, subject to cross-examination, and observable. In addition, the trial court noted the magistrate allowed the witness to testify via Skype with the provision that any difficulties during the testimony arising from the video conferencing would be addressed and, if the difficulties could not be remedied, the witness would be made available at a later date. The court noted that while it appeared from the record that there may have been a few occasions where the witness was unable to hear the question asked due to a connection issue, there was no objection made by the defense. The court determined that the reliability elements were satisfied because the parties and the court had the opportunity to view the witness during her testimony and to observe her demeanor, and nothing in the record indicated any physical evidence or exhibits were improperly shown to the witnesses.

**{¶ 18}** On appeal, appellant raises the following assignment of error for our review:

> The juvenile court violated H.P.P., Jr.'s constitutional right to confrontation when it allowed the sole eyewitness to testify via Skype, in violation of the Sixth and Fourteenth Amendment to the U.S. Constitution; and, Article I, Section 10 of the Ohio Constitution.[2]

## Analysis

**{¶ 19}** While admission of testimony is generally reviewed for an abuse of discretion, the question of whether a criminal defendant's rights under the Confrontation Clause have been violated is reviewed de novo. *State v. Smith*, 162 Ohio App.3d 208, 2005-Ohio-3579, 832 N.E.2d 1286, ¶ 8 (8th Dist.), citing *United States v. Robinson*, 389 F.3d 582, 592 (6th Cir.2004).

**{¶ 20}** Under both the federal and Ohio constitutions, a criminal defendant has a right to confront witnesses. The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions the accused shall enjoy the right * * * to be confronted with the witnesses against him." Article I, Section 10 of the Ohio Constitution states that "[i]n any trial, in any court, the party accused shall be allowed * * * to meet the witnesses face to face * * *." While these constitutional

---

[2] There are two appeal numbers in this consolidated case; Appeal No. 108861 was taken from the juvenile court's judgment in the instant lower court case (DL 19100170), while Appeal No. 108860 was taken from the court's entry in an unrelated assault case, DL 19104244, in which the court committed appellant to the Ohio Department of Youth Services for a minimum of six months consecutive to appellant's commitment in the instant case (DL 19100170) for a total of 18 months to a maximum period not to exceed appellants attainment of the age of 21. On appeal, appellant does not assign any errors regarding the trial court's judgment regarding the term of his commitment for our review.

provisions are not identical, the Ohio Constitution provides no greater right of confrontation than the Sixth Amendment. *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775, ¶ 12.

{¶ 21} In the seminal case from the United States Supreme Court permitting remote testimony, *Maryland v. Craig*, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), the Court explained that although a preference for face-to-face confrontation at trial is reflected in the Confrontation Clause, the preference "'must occasionally give way to considerations of public policy and the necessities of the case.'" *Id.* at 849, quoting *Mattox v. United States*, 156 U.S. 237, 243, 15 S.Ct. 337 (1895). The Court noted that the right to confrontation is not absolute, rather, "[t]he central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Craig* at 845. The court in *Craig* upheld a conviction after determining that a showing of necessity was made by the state for a child witness to testify via closed circuit television.

{¶ 22} Pursuant to *Craig*, this court held that to qualify as an exception to the face-to-face confrontation requirement, "'the procedure must (1) be justified, on a case-specific finding, based on important state interests, public policies, or necessities of the case and (2) must satisfy the other three elements of confrontation — oath, cross-examination, and observation of the witness's demeanor.'" *State v. Marcinick*, 8th Dist. Cuyahoga No. 89736, 2008-Ohio-3553, ¶ 18, quoting *Harrell v. State*, 709 So.2d 1364, 1369 (Fla.1998), citing *Craig* at 849-851.

{¶ 23} Regarding the question of whether the video testimony was justified, this court in *Marcinick* found the teleconferencing testimony of a social worker who was in Belgium at the time of the trial did not violate the defendant's right to confrontation. In *State v. Oliver*, 2018-Ohio-3667, 112 N.E.3d 573 (8th Dist.), two out-of-state individuals were eyewitnesses to the assault and burglary offenses committed by appellant in Cleveland. Both had returned to their state of residence when the trial was held, and the trial court allowed them to testify by Skype. This court determined the state sufficiently established that one of the witnesses who resided in Kentucky and was caring for her husband after his surgery was unavailable. *See also State v. Sheline,* 8th Dist. Cuyahoga No. 196649, 2019-Ohio-528 (witness who was in California at time of trial was deemed unavailable where state had attempted but was unsuccessful at making arrangements to fly her back for trial). However, this court in *Oliver* concluded that the trial court erred in permitting the remote testimony of the other out-of-state witness, who resided in Jacksonville, Florida, but was not employed at the time of trial. This court found this witness was not unavailable; the fact she would be inconvenienced was insufficient justification to allow this witness to testify remotely. This court, however, ultimately found the error harmless because her testimony was cumulative.

{¶ 24} There is no bright-line rule, however, for determining whether a certain distance would justify remote testimony. Rather, the court is to make a case-specific finding, "based on important state interests, public policies, or necessities of

the case." *Marcinick* at ¶ 18. Here, the state points to the specific circumstances of the case. The witness resided and worked in Columbus, where the criminal incident occurred, but the case was transferred at the last moment upon motion by appellant's attorney on the day of the scheduled trial. On the day of trial, she was unavailable because she was working that day as a therapeutic behavioral specialist at a youth home operated by the National Youth Advocate Program in Franklin County. Furthermore, the trial court allowed the possibility of having the witness testify in the courtroom on a later date should particularized concerns arise over her remote testimony. Under the totality of these case-specific circumstances, the testimony of the witness by Skype from Columbus appears to be justified, as the trial court found.

{¶ 25} Regarding the reliability elements, Massie was under oath and subject to cross-examination. However, appellant argues the reliability element was not met because the trial court was not able to properly view the witness's demeanor.

{¶ 26} As the United States Supreme Court held, while the Confrontation Clause reflects a preference for face-to-face confrontation at trial, the defendant's right to confrontation is not violated provided that the witness "testify under oath; the defendant retains full opportunity for contemporaneous cross-examination; and the judge, jury, and defendant are able to view (albeit by video monitor) the demeanor (and body) of the witness as he or she testifies." *Craig,* 497 U.S. at 851, 110 S.Ct. 3157. The Court further explained:

[a]lthough we are mindful of the many subtle effects face-to-face confrontation may have on an adversary criminal proceeding, the presence of these other elements of confrontation — oath, cross-examination, and observation of the witness' demeanor — adequately ensures that the testimony is both reliable and subject to rigorous adversarial testing in a manner functionally equivalent to that accorded live, in-person testimony.

*Id. See also State v. Self,* 56 Ohio St.3d 73, 564 N.E.2d 446 (1990) ("[l]iteral face-to-face confrontation is not the sine qua non of the confrontation right"; rather, its "underlying value is grounded upon the opportunity to observe and to cross-examine").

{¶ 27} Here, the transcript reflects that at the hearing on the state's motion for permission of the video testimony, the court noted that "we have an extremely large screen in our courtroom that is visible to everyone in the courtroom" and asked the defense counsel for the specific basis of her claim that the witness's demeanor cannot be observed. In response, the defense counsel did not object to the specific technological setup in the courtroom, but rather lodged a general complaint that video testimony in general would not allow one to "pick up the nuances that you do when you have a face-to-face [confrontation]." During Massie's testimony, no objection was raised on the ground that her demeanor could not be observed on the video screen.

{¶ 28} Appellant claims on appeal that Massie's testimony was "riddled with malfunctions of the Skype video feed." This allegation is not borne out by our review of the transcript, however. Before the witness began her testimony, the court asked the parties and the witness to be aware of the potential pitfalls of video

testimony and to speak in a manner to accommodate such testimony. The court also stated that it would address specific concerns if they arose and would be willing to allow the witness to testify at a later date if necessary. While there was one occasion where the witness indicated the feed was freezing, the technological issue was quickly resolved and the transcript reveals no further glitches with the video feed. In addition, on several occasions where the witness indicated she did not hear the question, the question was repeated and the testimony continued without further problems. The defense counsel did not raise concerns on any of these occasions.

{¶ 29} Given the record before us, therefore, even if we were to find the trial court erred in allowing the witness to testify remotely because the state did not sufficiently justify the witness's unavailability, we note that a Confrontation Clause error does not require an automatic reversal. "A constitutional error can be held harmless if we determine that it was harmless beyond a reasonable doubt." *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 78, citing *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Whether a Sixth Amendment error is harmless beyond a reasonable doubt depends on "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Conway* at ¶ 78, citing *Chapman* at 23. The record shows that the trial court here took precautions to ensure that the remote testimony did not violate appellant's right to confrontation. Having thoroughly reviewed the record, we cannot say there is a reasonable possibility that the remote testimony contributed to appellant's conviction. Even if the state did not sufficiently

justify Massie's testifying remotely, we find the trial court's admission of the witness's remote testimony harmless beyond a reasonable doubt. *Accord State v. Durst*, 6th Dist. Huron No. H-18-019, 2020-Ohio-607 (while a witness should not have been permitted to testify remotely because the state did not establish that he was unavailable to appear in person, the admission of the remote testimony without a preliminary showing of unavailability was harmless error). Appellant's sole assignment of error lacks merit.

{¶ 30} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution. The finding of delinquency having been affirmed, any bail or stay of execution pending appeal is terminated. Case remanded to the trial court for execution of commitment.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
MICHELLE J. SHEEHAN, JUDGE

SEAN C. GALLAGHER, P.J., and
RAYMOND C. HEADEN, J., CONCUR