[Cite as *State v. Toland*, 2011-Ohio-5150.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 95322**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## RICHARD TOLAND

DEFENDANT-APPELLANT

**JUDGMENT:
CONVICTIONS AFFIRMED,
SENTENCE REVERSED AND REMANDED**

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No.   CR-532150

**BEFORE:**   Keough, J., Boyle P.J., and Jones, J.

**RELEASED AND JOURNALIZED:**   October 6, 2011

**ATTORNEY FOR APPELLANT**

Thomas A. Rein
Leader Building, Suite 940
526 Superior Avenue
Cleveland, OH   44114

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

Anne McDonough
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, OH 44113

KATHLEEN ANN KEOUGH, J.:

{¶ 1}   Defendant-appellant, Richard Toland ("Toland"), appeals his convictions for drug possession, drug trafficking, having weapons while under disability, and possessing criminal tools.   For the reasons that follow, we affirm his convictions, but reverse his sentence and remand for resentencing.

{¶ 2}   In 2010, Toland was charged with two counts of drug possession in violation of R.C. 2925.11(A), two counts of drug trafficking in violation of R.C. 2925.03(A)(1), three counts of drug trafficking in violation of R.C. 2925.03(A)(2), one count of having weapons while under disability in violation of R.C. 2923.13(A)(3), and one count of possessing criminal tools in violation of R.C. 2923.24(A).   All counts

contained forfeiture specifications and one count also contained a firearm specification. Toland waived his right to a jury trial and the case was tried to the court.

{¶ 3} This case arises from a series of controlled buys involving Toland and a confidential informant ("CI") and a subsequent search of Toland's residence. On December 7, 2009, Detective Robert McKay arranged a controlled buy between the CI and Toland. The CI purchased four bags of heroin from Toland at a bus stop near East 55th Street and Woodland Avenue. After the buy, Toland walked to a residence on East 55th Street and entered the front door.

{¶ 4} On December 8, a second controlled buy from Toland took place outside his residence on East 74th Street. During this buy, Detective McKay was present and working undercover when the sale occurred. Toland exited the downstairs portion of his residence, walked to the vehicle where both Detective McKay and the CI were seated, and engaged in a hand-to-hand transaction of two packets of heroin with the CI. After the exchange, Toland went back to the downstairs portion of the residence and went inside.

{¶ 5} Based on these two controlled buys, Detective McKay set up surveillance of the East 55th and East 74th Street residences. Detective McKay witnessed Toland engage in suspected drug transactions primarily during the day out of the East 55th Street residence, and a few suspected transactions at night out of the East 74th Street residence. As a result of these observations and the prior controlled buys, Detective McKay obtained search warrants for both residences.

{¶ 6} On December 11, the search warrants were executed. Detective McKay testified that upon entering the East 74th Street residence, Toland was present and was advised of his Miranda rights. Thereafter, Detective McKay conducted a pat-down search of Toland's person. During the pat-down search, Detective McKay recovered $630 and a "large handful of sandwich baggies" from Toland's pockets.

{¶ 7} Toland told Detective McKay that he had just moved into the house and that his niece and her daughter had been evicted from their residence and were staying with him for awhile. During the search of the residence, Detective McKay discovered in Toland's bedroom closet a "blue wax paper bag" which, according to Detective McKay, is commonly used to store heroin. Detective McKay further testified that he saw the jacket Toland wore during the December 7 and 8 sales hanging in the same closet where the wax bag was found.

{¶ 8} Detective Thomas Barnes also searched the bedroom and found marijuana behind the dresser and a loaded gun on a shelf in Toland's bedroom closet. The marijuana was packaged in eight individually-wrapped bags. After finding the items, Detective Barnes reprimanded Toland for having the drugs and gun in the house because there was a child who also lived there. Toland responded, "I know, you're right, you're exactly right, Detective."

{¶ 9} At the conclusion of the State's case, Toland made a Crim.R. 29 motion for judgment of acquittal. The motion was granted as to one count of drug trafficking but denied as to all other counts. Toland also moved the trial court for a directed verdict on the forfeiture specifications, which the court granted in part. The trial court

subsequently found Toland guilty of the remaining counts and sentenced him to a total prison term of one year.

{¶ 10} Toland appeals, raising two assignments of error contending that his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence.[1]

{¶ 11} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, Cuyahoga App. No. 92266, 2009-Ohio-3598, ¶12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 942, paragraph two of the syllabus.

{¶ 12} A manifest weight challenge, on the other hand, questions whether the prosecution met its burden of persuasion. *State v. Thomas* (1982), 70 Ohio St.2d 79, 80, 434 N.E.2d 1356. A reviewing court may reverse the judgment of conviction if it appears that the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541.

---

[1] At trial, defense counsel specifically argued his Crim.R. 29 motion as to only Counts 7 and 8. However, we find that defense counsel's statement that he was "asking for it [as to Counts 1 through 6 and 9], but I see why that could possibly be denied" was sufficient to preserve a sufficiency of the evidence argument on appeal as to all counts. The trial court apparently considered the motion as to all counts, stating, "I agree with [defense counsel] as [it] pertains to Counts 1 through 6 regarding the two drug sales." Hence, we consider Toland's sufficiency argument regarding all counts. Morever, the issue of waiver of a sufficiency claim has not been raised by the State on appeal.

{¶ 13} Toland's convictions for drug possession and drug trafficking arise from the two controlled buys between him and the CI on December 7 and 8.

{¶ 14} R.C. 2925.11(A), drug possession, provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance." R.C. 2925.03, drug trafficking, provides that "(A) [n]o person shall knowingly * * * (1) [s]ell or offer to sell a controlled substance; [or] "(2) [p]repare for shipment, ship, *transport*, *deliver*, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person." (Emphasis added.)

{¶ 15} Regarding the December 7 buy, Detective McKay testified that he arranged a controlled buy of heroin between Toland and a CI and that the CI purchased four bags of heroin from Toland. Detective McKay testified that on December 8 he arranged a second controlled buy from Toland, and the CI purchased two packets of heroin from Toland. This testimony was sufficient evidence of drug possession in violation of R.C. 2925.11(A) and drug trafficking pursuant to R.C. 2925.03(A)(1).

{¶ 16} We also find that sufficient evidence was presented to support Toland's conviction for drug trafficking under R.C. 2925.03(A)(2). In *State v. Simuel*, Cuyahoga App. No. 89022, 2008-Ohio-913, this court upheld a conviction for drug trafficking in violation of R.C. 2925.03(A)(2) when the testimony and evidence revealed that the defendant crossed the street to engage in a hand-to-hand drug transaction with a CI. This court concluded that "crossing the street" was sufficient to satisfy "transport" under R.C. 2925.03(A)(2). Id. at ¶55-57.

**{¶ 17}** Regarding the drug transaction on December 7 at a bus stop near East 55th Street and Woodland Avenue, Detective McKay testified that he and the CI called Toland and, based on that conversation, drove to an East 55th Street residence. When they arrived, they observed Cleveland Metropolitan Housing Authority zone cars patrolling the area. Detective McKay and the CI called Toland again, and then drove to a nearby bus stop where Toland and the CI engaged in a hand-to-hand transaction for drugs. Detective McKay testified that Toland then "walked back to the address of 2448 East 55th and entered through the north door." The inference from this testimony is that Toland initially told Detective McKay and the CI to come to the residence on East 55th Street but after the second call, told them to go to the bus stop. After the transaction, Toland then "walked back" to the residence on East 55th. The circumstantial evidence indicates that Toland traveled from the residence to the bus stop to engage in a drug transaction. "Circumstantial evidence and direct evidence inherently possess the same probative value * * *." *Jenks* at paragraph one of the syllabus. Accordingly, Toland's actions were sufficient for "deliver[y]" or "transport" under R.C. 2925.03(A)(2). See *Simuel*.

**{¶ 18}** Similarly, with respect to the December 8 drug transaction outside Toland's residence on East 74th Street, Detective McKay observed Toland emerge from the steps of the house, walk to the CI, engage in a hand-to-hand transaction, and then walk back into the house. This "walking to the CI" to sell drugs is sufficient for "deliver[y]" under R.C. 2925.03(A)(2). See *Simuel*.

{¶ 19} Based on the circumstantial evidence presented at trial regarding the December 7 transaction and the direct evidence presented regarding the December 8 transaction, we hold that sufficient evidence of drug trafficking under R.C. 2925.03(A)(2) was presented and the trier of fact did not lose its way in finding Toland guilty of drug possession and drug trafficking under both sections of R.C. 2925.03(A).

{¶ 20} Toland was also convicted of having weapons while under disability, in violation of R.C. 2923.13(A)(3). This section provides in pertinent part: "[U]nless relieved from disability * * *, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if * * * [t]he person is under indictment for or has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse * * *."

{¶ 21} In this case, Toland stipulated to a 1989 drug possession conviction. Notwithstanding Toland's argument that the State failed to present sufficient evidence that he knew the gun was in the house, Detective Barnes testified that after he found the gun and drugs, he reprimanded Toland for having them in the house with a child, and Toland responded, "I know, you're right, you're exactly right, Detective." Additionally, the gun was found in a closet containing the same jacket Toland wore during the controlled buys with the CI. This evidence was sufficient to establish that Toland "ha[d]" the firearm in violation of R.C. 2923.13(A)(3) and therefore his conviction was not against the manifest weight of the evidence.

{¶ 22} R.C. 2923.24(A), possessing criminal tools, provides that "[n]o person shall possess or have under the person's control any substance, device, instrument, or

article, with purpose to use it criminally." The indictment alleged that Toland possessed $630 in U.S. currency, a gun, scale, and packaging materials with the intent to use them criminally. Although no testimony was elicited regarding the scale, Toland's conviction for possessing criminal tools was nonetheless supported by sufficient evidence because evidence was presented that Toland possessed the currency, gun, and packaging materials with the intent to use them criminally. Specifically, Detective McKay testified that (1) large amounts of money on a person is often indicative the person has engaged in drug sales; (2) "sandwich baggies" are often used to package drugs for sale; and (3) "blue wax paper bags" are often used to store heroin. The cumulative effect of this testimony and evidence indicates that Toland's conviction for possessing criminal tools was not against the manifest weight of the evidence.

{¶ 23} Accordingly, Toland's assignments of error are overruled.

{¶ 24} However, sua sponte we raise the issue of merger on the counts relative to drug possession and trafficking. In *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, the Ohio Supreme Court held that offenses of drug possession and drug trafficking are allied offenses of similar import for which multiple punishments are barred, and that a court of appeals must reverse the judgment of conviction and remand for a new sentencing hearing at which the State must elect which allied offense it will pursue against the defendant. Id. at paragraph two of the syllabus. Accordingly, Toland's sentence is reversed and remanded for a new sentencing hearing at which the State must elect which allied offense it will pursue against Toland.

{¶ 25} Convictions affirmed, sentence reversed and remanded for resentencing.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

KATHLEEN ANN KEOUGH, JUDGE

MARY J. BOYLE, P.J., CONCURS;
LARRY A. JONES, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE OPINION

LARRY A. JONES, J., CONCURRING IN PART AND DISSENTING IN PART:

**{¶ 26}** Respectfully, I dissent as to the majority's resolution of Toland's sufficiency of the evidence challenge of the drug trafficking convictions under R.C. 2925.03(A)(2).

**{¶ 27}** R.C. 2925.03(A)(2) provides as follows: "No person shall knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person."

**{¶ 28}** The evidence here demonstrated that, on December 7, 2009, Detective Robert McKay arranged a controlled buy of heroin from Toland. An informant

purchased four bags of heroin from Toland.   After the buy, Toland entered the front door of a residence on East 55th Street.

{¶ 29} A second controlled buy from Toland occurred the following day, December 8, 2009.   This buy took place outside of a residence on East 74th Street. Toland exited the downstairs portion of the residence, met the informant at McKay's vehicle,[2] and engaged in a hand-to-hand exchange with the informant.   After the exchange, Toland went back into the downstairs portion of the residence.   The informant had purchased two packets of heroin.

{¶ 30} The majority finds that Toland's "walking" or "traveling" to meet the informant for the sales and then "walking" away or back to the house after the sales constituted sufficient evidence of "delivery" or "transport" to support the drug convictions under R.C. 2925.03(A)(2), and cites *State v. Simuel*, Cuyahoga App. No. 89022, 2008-Ohio-913, in support of its position.   In *Simuel*, the defendant sold crack cocaine to an informant.   This court upheld his conviction under R.C. 2925.03(A)(2) "because he transported the crack cocaine across the street and delivered it to the CI." Id. at ¶55.   I disagree with the reasoning of both the majority and *Simuel*.

{¶ 31} In this case and in *Simuel*, the evidence demonstrated that drug sales took place.   The sales constituted drug trafficking under R.C. 2925.03(A)(1), which provides that "[n]o person shall knowingly * * * [s]ell or offer to sell a controlled substance[.]" Under the majority and *Simuel's* reasoning, nearly any time an offender trafficks in drugs

---

[2]McKay was undercover.

by selling or offering to sell them, he will probably also traffick in drugs by "preparing" them because there will usually be some type of movement, e.g., going to the sale or leaving the sale. Would walking from room A in a house to room B to get drugs to sell to a person in room C in the house constitute "delivery" or "transport" sufficient for "preparation of drugs for sale?" I do not believe the legislature intended that the type of "movement" in this case, *Simuel*, or the hypothetical would constitute "transport" or "delivery" sufficient to support a drug trafficking conviction under R.C. 2925.03(A)(2). In my view, what occurred here and in *Simuel* in terms of drug trafficking were drug sales, and nothing more.

{¶ 32} In light of the above, I dissent as to the majority's finding that sufficient evidence supported the drug trafficking convictions under R.C. 2925.03(A)(2). I concur in the remainder of the opinion.